**In re D'Juana PARR, Relator.**

No. 01–05–01162–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 6, 2006.

---

Shawn Casey, Houston, for relator.

Myrna D. Gregory, Houston, for real party in interest.

Panel consists of Justices JENNINGS, HANKS, and HIGLEY.

## OPINION

LAURA C. HIGLEY, Justice.

Relator D'Juana Parr requests habeas corpus relief, asserting that she is illegally restrained by the trial court under its December 16, 2005 order that commits her to confinement in the Harris County jail. We deny habeas corpus relief.

### Factual Background

Real party in interest, Brian Parr, and D'Juana, who had a son in 1998, divorced in Harris County on May 8, 2001.[1] The trial court appointed Brian and D'Juana joint managing conservators of their son and ordered D'Juana to pay child support of $126 per month, starting May 1, 2001, and continuing to be payable on the first day of each month thereafter until their son became 18, or other specified conditions, not relevant here, were fulfilled.

In her habeas petition here, D'Juana asserts that on March 3, 2005, she filed, in Montgomery County, Texas, a petition for divorce,[2] alleging that after the signing of the Harris County divorce decree, "the parties remarried by entering into an informal marriage." On April 11, 2005, D'Juana filed an amended petition for divorce, which does not mention the informal marriage. It alleges that on June 8, 2001, that the parties entered into their second marriage and ceased to live together as husband and wife on October 20, 2003. Further, it alleges that J.M.P. "is not under the continuing jurisdiction of any other court" and "[t]here are no court-ordered conservatorships, court-ordered guardianships, or other court ordered relationships affecting the child the subject of this suit." On June 7, 2005, counsel for Brian faxed a letter to the Montgomery County district clerk advising that Brian and D'Juana had been divorced since May 3, 2001. On June 8, 2001, Brian filed a special appearance in the Montgomery County proceeding.

On July 29, 2005, in the Harris County case, Brian filed his first amended motion for enforcement, asserting, among other things, that D'Juana had not made the court ordered child support payments from May 1, 2001 to July 1, 2005. On October 5, 2005, the trial court heard the motion,

1. Cause No. 2001–00813, *In the Matter of Brian K. Parr and D'Juana Parr and in the Interest of J.M.P.,* in the 247th District Court, Harris County, Texas.

2. Cause No. 05–03–02028–CV, *In the Matter of the Marriage of D'Juana Forster Parr and Brian K. Parr and in the Interest of J.M.P., a Child,* in the County Court at Law No. 3, Montgomery County, Texas.

and, on October 13, 2005, issued its order finding D'Juana in contempt for not making the $126 child support payments on five occasions from November 1, 2003 through March 1, 2004. For each of the five violations of the 2001 decree, the trial court assessed D'Juana confinement in the Harris County jail for 90 days, to run concurrently. In the October 13th order, the trial court conditionally suspended the commitment, provided that, among other things, D'Juana pay $100 per month against the $5,878.36 arrearage. In the order, the trial court also set a date in December 2005 as a hearing date to determine whether D'Juana had complied with the terms and conditions of the suspension of commitment and community supervision, on which the trial court had placed D'Juana.

On December 16, 2005, the trial court held the compliance hearing. D'Juana's counsel asserted that the trial court did not have jurisdiction because of the divorce petition pending in Montgomery County. After a telephone conference with the Montgomery County judge, the trial court determined that it would go forward with the compliance hearing.

Following the hearing, the trial court issued an order (hereafter "the December 16th order") finding that D'Juana had not complied with the terms and conditions of the suspension of commitment portion of the October 13th order. In the December 16th order, the trial court revoked the suspension of commitment and committed D'Juana to the Harris County jail for 90 days for each of the five violations of the 2001 divorce decree. Additionally, in the December 16th order, the trial court provided that D'Juana should be confined from "day to day until … D'Juana Parr has: (1)(2)(3)." D'Juana was placed in jail.

Here, on petition for writ of habeas corpus, D'Juana asserts the following issues:

(1) the trial court did not have jurisdiction to conduct the compliance hearing because of the divorce petition pending in Montgomery County, (2) the December 16th order is void because it orders more punishment than originally assessed in the October 13th contempt order, and (3) the December 16th order is void because it orders punishment for contempt without the ability for D'Juana to purge herself of contempt.

## Standard of Review

The purpose of a habeas corpus proceeding is not to determine the ultimate guilt or innocence of the relator, but only to ascertain whether the relator has been unlawfully confined. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex.1979). In a habeas corpus proceeding, the order or judgment challenged is presumed to be valid until a relator has discharged her burden of showing otherwise. *Ex parte Occhipenti*, 796 S.W.2d 805, 809 (Tex.App.-Houston [1st Dist.] 1990, orig. proceeding). A relator bears the burden to show the contempt order is void and not merely voidable. *In re Pruitt*, 6 S.W.3d 363, 364 (Tex.App.-Beaumont 1999, orig. proceeding). Appellate courts may order the contemnor released only if the judgment is void because of a lack of jurisdiction or because the contemnor was deprived of liberty without due process of law. *In re Houston*, 92 S.W.3d 870, 875, 875–76 (Tex.App.-Houston [14th Dist.] 2002, orig. proceeding).

## Jurisdiction/Venue

In issue one, D'Juana asserts that she is entitled to her unconditional release because the Harris County trial court was without jurisdiction to hear the enforcement proceeding in that jurisdiction over the matter passed to the Montgomery County court when she filed her divorce

petition there. In support of this assertion, D'Juana cites Texas Family Code section 155.201(a):

On the filing of a motion showing that a suit for dissolution of the marriage of the child's parents has been filed in another court, and requesting a transfer to that court, the court having continuing, exclusive jurisdiction of a suit affecting the parent-child relationship shall, within the time required by Section 155.204, transfer the proceedings to the court in which the dissolution of the marriage is pending. The motion must comply with the requirements of Section 155.204(a)

Tex. Fam.Code Ann. § 155.201(a) (Vernon Supp.2005).

Brian asserts that by filing the divorce petition in Montgomery County, D'Juana is attempting to use the court system as a shell game. In support of this assertion, Brian attaches, as Exhibit 1 to his first amended response to D'Juana's petition for habeas corpus relief, a certified copy of the Montgomery County court's order, signed February 8, 2006, sustaining Brian's special appearance and dismissing D'Juana's Montgomery County divorce petition with prejudice. In her reply brief, D'Juana responds that Brian's first amended response should be struck because it contains no citations to legal authority and because Exhibit 1 was not part of the record before the trial court. Additionally, D'Juana asserts that she has filed a motion for new trial in the Montgomery County case, and that, if it is unsuccessful, she intends to challenge the dismissal order by regular appeal. We decline to strike Brian' s first amended response or its Exhibit 1 because, without considering them, we dispose of issue one on another ground as set out below.

Section 155.201 is a venue statute. Cf. Leonard v. Paxson, 654 S.W.2d 440, 441 (Tex.1983) (characterizing former Texas Family Code section 11.06(b),[3] antecedent statute to current section 155.201, as a venue provision of the Family Code). Venue is a procedural right. In re Calderon, 96 S.W.3d 711, 719 (Tex.App.-Tyler 2003, orig. proceeding). There is a distinct difference between jurisdiction and venue. Etchieson v. State, 574 S.W.2d 753, 759 (Tex.Crim.App.1978). Jurisdiction concerns the authority of a court to try a case whereas venue has to do with the place or county where a case may be tried. Id. A court's jurisdiction contains two elements: (1) jurisdiction of the subject matter and (2) jurisdiction of the person. Ex parte Bowers, 671 S.W.2d 931, 935 (Tex.App.-Amarillo 1984, no pet.). The first element is established by operation of law through the constitutional and statutory provisions that enumerate the kinds of cases the court can entertain. Id. The second element is established either by a litigant's voluntary entry into the court or by the serving of process on the litigant in accordance with state procedures consistent with due process. Id.

In this case, the court in Harris County had jurisdiction of the subject matter under the general laws; Texas Constitution, article 5, section 8; Texas Government Code, section 24.007 (Vernon 2004); and Texas Government Code, section 24.424 (Vernon 2004). It acquired jurisdiction over D'Juana's person when she was served with a copy of the motion for contempt. Thus, at the time the Harris County court issued the contempt order, its jurisdiction was fully activated. It is well-established that habeas corpus will lie only to review jurisdictional defects or denial of fundamental constitutional rights. Ex

3. Act of May 25, 1973, 63rd Leg., R.S., ch. 543, 1973 Tex. Gen. Laws 1411, 1414, recodi- fied by Act of April 6, 1995, 74th Leg., R.S., ch. 21, § 1, 1995 Tex. Gen. Laws 113, 170.

*parte Watson,* 601 S.W.2d 350, 352 (Tex. Crim.App.1980). A judgment and sentence may be collaterally attacked only where they are void because the trial court lacked jurisdiction. *Id.* Here, as we have seen, the trial court had jurisdiction. D'Juana may not collaterally attack her contempt sentence on the basis that venue was improper. *See id.* We overrule issue one.

### December 16, 2005 Commitment Order

■ In issue two, D'Juana asserts that the December 16th commitment order is void because it orders more punishment than was originally assessed in the October 13th contempt and commitment order. In issue three, D'Juana asserts that the commitment order is void because it orders punishment for contempt without providing an ability for her to purge herself of the contempt. Here, D'Juana refers to the part of the December 16th order that says:

> IT IS FURTHER ORDERED that the prior suspension of commitment is hereby revoked and the RESPONDENT/OBLIGOR, D'Juana Parr is committed to the county jail of Harris County, Texas for 90 ninety days for each separate violation on number 17, 18, 19, 20 and 21 on page 7 and 8 of this order and that RESPONDENT/OBLIGOR, D'Juana Parr shall be confined therein day to day, until RESPONDENT/OBLIGOR, D'Juana Parr has:
>
> (1)
> (2)
> (3)

D'Juana contends that the language, "day to day" adds to the 90 concurrent days of punishment ordered in the October 13th order and fails to provide contempt purging provisions in violation of her due process rights. Such a provision is a failed attempt by the trial court to add a coercive form of confinement to the already prescribed 90 days of punitive concurrent confinement. D'Juana's attack on this attempted coercive confinement provision is premature because she has not yet served the 90 days of punitive confinement. *See Occhipenti,* 796 S.W.2d at 810 (holding it would be premature for this court to address coercive portion of contempt order before relator had served punitive sentence). We overrule issues two and three.

We remand D'Juana to the custody of the Sheriff of Harris County to serve the balance of her punitive contempt confinement ordered by the trial court.