

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-14-00013-CV
_____

IN RE CRAWFORD & COMPANY, CRAWFORD & COMPANY HEALTHCARE
MANAGEMENT, INC., PATSY HOGAN, AND OLD REPUBLIC INSURANCE
COMPANY, RELATORS

_____

ORIGINAL PROCEEDING

_____

March 17, 2014

## ON PETITION FOR WRIT OF MANDAMUS

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Crawford & Company, Crawford & Company Healthcare Management, Inc., Patsy Hogan and Republic Insurance Company (collectively referred to as Crawford) petition the court for a writ of mandamus. We are being requested to:

> . . . conditionally issue a writ of mandamus ordering the trial court to grant the Crawford Defendants' First Amended Plea to the Jurisdiction and Old Republic's Second Amended Motion to Dismiss, as well as Relators' respective motions for summary judgment, and dismiss all of Plaintiffs' claims for lack of subject matter jurisdiction due to the exclusive jurisdiction of the [Division of Workers' Compensation] and Plaintiffs' failure to exhaust administrative remedies before the [Division of Workers' Compensation].

The "plaintiffs" to which Crawford refers are Edward Glenn Johnson and Natalie Johnson. And, what Crawford wants is for us to tell the trial court it should have dismissed all common law causes of action asserted against them simply because they relate, in some way, to a claim for workers' compensation.

The relator (that is, Crawford here) has the burden to show its entitlement to the writ. *In re Kuster*, 363 S.W.3d 287, 290 (Tex. App.—Amarillo 2012, orig. proceeding). "[O]ne is not entitled to same merely at the asking." *Curtis Well Servicing Co. v. Waters,* No. 07-96-0102-CV, 1996 Tex. App. LEXIS 2438, at *4 (Tex. App.—Amarillo, June 10, 1996, orig. proceeding) (not designated for publication). Quite the contrary, the petitioner has the burden of clearing two hurdles. One involves the obligation to establish that the trial court clearly abused its discretion or violated a duty imposed by law. *Id.; accord, Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). The other requires the relator to illustrate that his legal remedy of appeal is inadequate. *Curtis Well Servicing Co. v. Waters,* 1996 Tex. App. LEXIS 2438, at *4; *accord, Walker v. Packer*, 827 S.W.2d at 840. Crawford did not clear these two hurdles for the following reasons.

First, the trial court signed the order now being attacked in August of 2013. Crawford, however, waited approximately five months (or until January 17, 2014) to attack it via a petition for writ of mandamus relief. By that time, the lawsuit had been assigned a trial date of February 10, 2014. Needless to say, petitioning for mandamus relief resulted in the postponement of trial. The effect of that postponement is enhanced when one realizes that the underlying lawsuit was filed over seven years ago, that is in August 2006. Given the age of the suit and the five-month delay in petitioning us for

relief, one could interpret the initiation of the mandamus proceeding shortly before trial was to begin as effort to further hinder the timely adjudication of the Johnsons' claims. *See International Awards, Inc. v. Medina*, 900 S.W.2d 934, 935 (Tex. App.—Amarillo 1995) (original proceeding) (holding delay of four months, until 6 days before trial, justified denial of petition for mandamus); *Furr's Supermarkets, Inc. v. Mulanax* , 897 S.W.2d 442, 443 (Tex. App.—El Paso 1995) (original proceeding) (petition filed four months after oral ruling and one month after signed order denied due to laches); *see also Bailey v. Baker*, 696 S.W.2d 255, 256 (Tex. App.—Houston [14th Dist.] 1985) (orig. proceeding) (delay of four months, until two weeks before trial, to challenge discovery order by mandamus justified denial of petition).

Second, Crawford avers that mandamus is a proper remedy for reviewing a trial court's "failure to grant a plea to the jurisdiction for failure to exhaust administrative remedies. . ." available within the Division of Workers' Compensation. Yet, nothing is said about the propriety of using a mandamus proceeding to review a decision rendered upon a motion for summary judgment. *See In re McAllen Med. Ctr,. Inc.,* 275 S.W.3d 458, 465 (Tex. 2008) (holding that mandamus is generally unavailable when a trial court denies summary judgment, no matter how meritorious the motion.) Furthermore, the motion for summary judgment denied below (in part, that is) posed issues unrelated to the exhaustion of administrative remedies. For instance, Crawford argued in it that 1) the "summary judgment evidence conclusively establishe[d] that the Defendants did not initiate or procure any prosecution of Plaintiffs by any law enforcement agency for any crime, which is a necessary element of a malicious prosecution cause of action," and 2) "the summary judgment evidence conclusively establishes that probable cause existed

3

for the prosecution of Plaintiffs for insurance fraud." That the claim for malicious prosecution (alleged by the Johnsons against Crawford) fell outside the worker's compensation scheme apparently was something to which Crawford admitted below.[1]

Simply illustrating that the trial court's decision regarding the exhaustion of administrative remedies may be reviewed via a mandamus proceeding does not illustrate that the consideration of other unrelated topics appearing in the motion for summary judgment may also be reviewed via the same proceeding. In short, Crawford failed to prove it cleared the second obstacle mentioned above, that is, the obstacle prohibiting the avoidance of an appeal.

As for the exhaustion debate, the Johnsons certified, through their legal counsel, that their administrative remedies before the Division of Worker's Compensation had been exhausted. They also provided us with documentation suggesting as much. This, at the very least, creates a question of fact regarding the matter, and the resolution of such questions are not within the province of a mandamus proceeding. *In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006) (orig. proceeding).

Fourth, Crawford's sweeping reliance upon the recent Supreme Court decision in *Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430 (Tex. 2012) is somewhat misplaced. They correctly argue that the Supreme Court used *Ruttiger* to overrule its decision in *Aranda v. Insurance Co. of N. A.*, 748 S.W.2d 210 (Tex. 1988), at least to the extent that *Aranda* recognized a common law claim for breach of the duty of good faith and fair dealing against a workers' compensation carrier. *Texas Mut. Ins. Co. v. Ruttiger*, 381

---

[1] During a hearing on the motions in question, Old Republic informed the trial court that "we turn to malicious prosecution, Your Honor, and there's no question but that it is outside of comp. That's a whole different animal. Comp has nothing to do with malicious prosecution and we're not arguing that it does."

S.W.3d at 433. That the same court in the same opinion also vitiated the existence of other extra-contractual common law causes of action alleged by the Johnsons is not as clear.[2] Indeed, the Supreme Court said nothing of them but instead mentioned only claims arising from an insurer breaching a duty of good faith and fair dealing. So too did it acknowledge that the language in the Workers' Compensation Act "does not purport to preclude all types of claims against workers' compensation insurers." *Id.* at 456. Indeed, the court found that claims arising under 541.061 of the Texas Insurance Code could still be urged. *Id.* at 446; *Accord, Hopper v. Argonaut Ins. Co.*, No. 03-12-00734-CV, 2013 Tex. App. LEXIS 13030 (Tex. App.—Austin October 18, 2013, no pet. h.) (concluding similarly).

It also appears that in arriving at the conclusion it did, the *Ruttiger* court was concerned with determining whether the existence of a common law claim for the breach of the duty of good faith and fair dealing was inconsistent with the current legislative/administrative workers' compensation scheme. It noted how the prior scheme was reformed to reduce employer costs and provide greater employee benefits in a timely manner. *Id.* at 448. It also discussed how the legislature wanted to 1) pursue the goal of reducing the disparity of bargaining power between an employee and an insurer, 2) control the manner in which claims for workers' compensation were processed, and 3) control an insurer's ability to arbitrarily refuse or delay workers' compensation benefits*. Id.* And, those goals led to legislative and administrative reforms that 1) reduced the time in which carriers could file a notice of dispute or delay

---

[2] Those extra-contractual claims consist of negligence, gross negligence, breach of contract, quantum meruit, negligent and intentional misrepresentation, fraud, fraud by nondisclosure, fraudulent inducement, intentional infliction of emotional distress, violations of the DTPA, malicious prosecution, and conspiracy to commit the alleged torts.

paying benefits and 2) imposed duties upon insurers to "promptly conduct adequate investigations and reasonably evaluate and expeditiously pay workers' legitimate claims" or risk the imposition of penalties. *Id.* at 448-49. Due to these reforms, ". . . the deficiencies that led [the Supreme Court to] extend a cause of action . . . for breach of the duty of good faith and fair dealing to the workers' compensation system" were no longer present, according to the *Ruttiger* majority. *Id.* at 449-50. Because the statute and regulations now address that concern, or so the court believes, there no longer was a need for the cause of action.

Where or how the initiation of baseless criminal proceedings by an insurer against an employee and the amelioration of damages caused by such misconduct fits in the legislative/administrative workers' compensation scheme goes unmentioned in *Ruttiger.* Nor does Crawford fill the void. It cites us to no provision of the Workers' Compensation Act that purports to regulate such conduct or remedy those kind of damages, *i.e.* damages unrelated to the amount of workers' compensation benefits to which an employee may be entitled. That claims of malicious prosecution inherently involve activity or misconduct outside the administrative avenues created by the workers' compensation laws further exemplifies that they were never intended to be subsumed within that administrative scheme.[3]

Simply put, a particular claim of malicious prosecution may tangentially arise from or have some attenuated relationship to a workers' compensation claim. But, that common law cause of action does not serve to protect, secure or timely resolve disputes involving the availability of workers' compensation benefits due a claimant.

---

[3] Crawford's reliance on *Liberty Mut. Ins. Co. v. Adcock*, 412 S.W.3d 492, 493 (Tex. 2013) to support the contention that *Ruttiger* disposed of all common law claims is misplaced here. A claim for malicious prosecution was not involved in *Adcock*.

Again, Crawford acknowledged as much when it told the trial court ". . . malicious prosecution, Your Honor, . . . there's no question but that it is outside of comp. That's a whole different animal. Comp has nothing to do with malicious prosecution . . . ." So, *Ruttiger* did not somehow pre-empt the cause of action. And, because at least one cause of action continues to exist, despite *Ruttiger*, we cannot say that the trial court abused its discretion in refusing to dismiss all the causes of action.

The petition for writ of mandamus is denied.


Brian Quinn
Chief Justice


Campbell, J. Concurring