In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-24-00248-CV**
**IN RE ART AGUILAR**

**Original Proceeding**
**284th District Court of Montgomery County, Texas**
**Trial Cause No. 24-03-03962-CV**

## MEMORANDUM OPINION

In a petition for a writ of mandamus, Relator Art Aguilar argues the trial court abused its discretion by issuing a sanctions award against Aguilar in connection with the disposition of a motion to disqualify Aguilar as counsel for Mill Man Steel, Inc.[1] Aguilar contends the trial court's findings of intentional bad faith and that Aguilar interfered with a core judicial function are not supported by evidence introduced at the sanctions hearing. We temporarily stayed the sanctions order and obtained a

---

[1] The order identifies Relator as Arturo Cuauhtemoc Aguilar. The party identified in the mandamus petition as Mill Man Steel, Inc. is referred to in parts of the record as Millman Steel, Inc. In this opinion, we refer to these parties by the names identified in the mandamus petition.

1

response from Real Party in Interest Leigh Ann Hood. We deny the petition for a writ of mandamus.

Background

In Trial Cause Number 24-03-03962-CV, Hood complained that Mill Man, through its attorney Art Aguilar, filed a lis pendens on Hood's homestead. Hood alleged Mill Man "has filed several lawsuits against [Hood] and her company claiming unjust enrichment, despite the fact that Ms. Hood and her company never performed any work for Mill Man, nor received any payments from Mill Man."[2] After two lawsuits initiated by Mill Man and assigned to the 284th District Court of

---

[2] According to the parties, beginning in March 2023 eight different suits have been filed in connection with the dispute that is at issue in Trial Cause Number 24-03-03962-CV. The suits include: (1) No. 09-23-03-03770-CV, *Millman Steel, Inc. v. Haydin Construction, LLC and Daryl M. Selzer*, filed March 14, 2023, in the 284th District Court of Montgomery County; (2) No. 23-05-07706-CV, *Mill Man Steel, Inc. v. Leigh Ann Hood and Prime Development Group, LLC*, filed May 30, 2023, in the 457th District Court of Montgomery County and transferred to the 284th District Court of Montgomery County; (3) No. 2023-33288, *Mill Man Steel, Inc. v. Daryl M. Selzer, Jennifer Selzer and Haydin Construction, LLC*, filed May 30, 3023 in the 334th District Court of Harris County; (4) No. 2023-36828, *Jennifer Pittsford Selzer v. Mill Man Steel, Inc.*, filed June 14, 2023, in the 270th District Court of Harris County; (5) No. 4:23-cv-02320, *Millman Steel Inc. v. Haydin Construction, LLC, Daryl M. Selzer, Jennifer Selzer, Allen Selzer, Leigh Ann Hood and Prime Development Group, LLC*, filed in the United States District Court for the Southern District of Texas Houston Division; (6) No. 23-32665, *In re: Daryl Matthew Selzer*, filed in the United States Bankruptcy Court for the Southern District of Texas Houston Division; (7) No. 23-32666, *In re Haydin Construction LLC*, filed July 17, 2023, in the United States Bankruptcy Court for the Southern District of Texas Houston Division; and (8) No. 24-03-03962-CV, *Leigh Ann Hood v. Mill Man Steel, Inc.*, filed March 11, 2024, in the 284th District Court of Montgomery County.

Montgomery County were disposed of by non-suit, Hood sued Mill Man to expunge the lis pendens and recover damages from Mill Man for filing an improper lis pendens.

Hood filed a motion to disqualify Aguilar as counsel for Mill Man in Trial Cause Number 24-03-03962-CV on May 8, 2024. Hood claimed that she divulged information to Aguilar in conversations that occurred while Hood was seeking Aguilar's legal services for a potential lawsuit against Daryl Selzer. At that time, Aguilar was representing Mill Man in litigation against Selzer.

On May 31, 2024, the trial court held a hearing on Hood's motion to disqualify Aguilar as counsel for Mill Man. Aguilar did not personally appear and co-counsel represented Mill Man in the hearing. The exhibits attached to the motion to disqualify were admitted without objection. In addition to requesting disqualification, Hood's attorney made an oral request for sanctions. The trial court recessed the hearing and issued a written order requiring Aguilar's personal appearance when the hearing reconvened on June 6, 2024.

On June 5, 2024, Hood supplemented her motion to disqualify with a written motion for sanctions. She asked the trial court to use its inherent power to sanction Aguilar for interfering with the trial court's core functions and disrespecting the integrity of the judicial system.

The day before the hearing on the motion to disqualify, Aguilar advised Hood's attorney that he was filing a motion to withdraw and asked if he would oppose the motion. At the beginning of the hearing, Aguilar complained that he received insufficient notice of the alleged sanctionable conduct. The trial court proceeded on the motion to disqualify but agreed to reset the portion of the motion that requested sanctions. The trial court determined Aguilar's motion to withdraw was noncompliant with Rule 10 of the Texas Rules of Civil Procedure and proceeded with Hood's motion for disqualification. Hood's attorney complained that Aguilar had established a pattern of avoiding sanctions by non-suiting a case when his tactics came under scrutiny then repeating the conduct in a new case.

The trial court found that Aguilar was disqualified from representing Mill Man in Trial Cause Number 24-03-03962-CV because Hood called Aguilar with a view towards obtaining his professional legal services so that the attorney-client privilege attached to the communication.

The trial court recessed the hearing to June 20, 2024, to address the supplemental motion for sanctions. On June 20, 2024, Mill Man filed a plea to the jurisdiction in which it argued that the trial court lacked subject matter jurisdiction to proceed with the merits on Hood's motion for sanctions for allegedly wrongful actions in other courts.

4

On June 20, the trial court considered Hood's request for sanctions against Aguilar. Aguilar appeared at the hearing on his own behalf. Aguilar claimed Hood's motion for sanctions failed to describe how he acted in bad faith. He argued, "Those two nonsuits do not equate to bad faith." Aguilar argued emails he sent to Hood's counsel might suggest an error of judgment but not bad faith. One of his emails included the statement, "Nonsuit the case, and I will speak to my client. But moving forward, one can be ready to make about 100k in fees in the next year because there's no way in the world my client pays a dime to this lady." In the hearing, Aguilar suggested that "had Ms. Hood never contacted me, I would have never found out about her to begin with." Aguilar claimed he forgot to release the lis pendens when he filed the non-suit and added that he would have released it if Hood's attorney had asked him to.

Pronouncing the court's ruling on the record, the trial court agreed that the trial court's jurisdiction was limited to the cases in the court where the judge presides, but explained that Aguilar had been disqualified in Trial Cause Number 24-03-03962-CV because he used the information he acquired when Hood consulted him to pursue litigation against her to impose a constructive trust on her homestead and file the lis pendens that was the subject of Hood's lawsuit against Mill Man. The court added that Aguilar had filed cases in the other state courts when the 284th District Court had dominant jurisdiction, Hood sued Mill Man because Aguilar

5

failed to release the lis pendens after he nonsuited the litigation against her, and Aguilar's immediate response to Hood's suit to remove the lis pendens had been to threaten to make her incur $100,000 in attorney fees unless she nonsuited her attempt to expunge the lis pendens. The trial court found Aguilar's email was evidence of bad faith. The court recessed the hearing until June 27, 2024.

The trial court reconvened the hearing on June 27, 2024. Aguilar again appeared on his own behalf. The trial court stated on the record that Aguilar had proffered a certificate that he had taken a three-hour CLE course. Hood's lawyer submitted billing records and testified as to attorney's fees incurred by Hood.

In an order signed on June 27, 2024, the trial court ordered Aguilar (1) to pay Hood $11,921.67 as reimbursement for her reasonable and necessary attorney's fees expended in the matter; (2) to pay "any award made against Mill Man Steel, Inc[.] in this case in a final judgment;" (3) attend 3 hours of CLE related to the ethical obligations of attorneys to courts and opposing counsel; and (4) "write and serve on counsel for Ms. Hood a 500+ word essay to Leigh Ann Hood containing descriptions of what he did wrong, why it was wrong, and steps he will take to ensure such things do not occur again." The trial court ordered Aguilar to complete "all of the sanctions imposed above by no later than July 26, 2024 at 5:00 p.m." and scheduled a compliance hearing for August 2, 2024. We stayed the order before the trial court

6

could hold the compliance hearing. The mandamus record does not contain specific objections to the trial court's order.

## Issues

In his mandamus petition, Aguilar contends the trial court erred by entering the sanctions award. He argues the hearings held by the trial court on June 20 and June 27 lack sufficient evidence to support the trial court's findings of intentional bad faith and that Aguilar interfered with a core judicial function. Aguilar argues the trial court imposed excessive sanctions, that requiring Aguilar to submit an apology letter to Hood amounts to a case-determinative admission against the interest of Mill Man, the trial court was not authorized to impose a CLE requirement that Hood did not request, and requiring Aguilar to pay $11,921.67 or appear in court and show cause or face possible contempt charges amounts to imprisonment for debt.

## Mandamus Standard

We may issue a writ of mandamus to remedy a clear abuse of discretion by the trial court when the relator lacks an adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding).

"A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker*, 827 S.W.2d at 839 (internal quotations omitted). "A trial court's failure to analyze or

apply the law correctly is an abuse of discretion." *In re Kappmeyer*, 668 S.W.3d 651, 655 (Tex. 2023) (original proceeding) (internal quotation omitted).

We determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments, considering whether extending mandamus relief will preserve important substantive and procedural rights from impairment or loss. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). This balancing test is necessarily a fact-specific inquiry that "resists categorization[.]" *Prudential*, 148 S.W.3d at 136. "The most frequent use we have made of mandamus relief involves cases in which the very act of proceeding to trial—regardless of the outcome—would defeat the substantive right involved." *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 465 (Tex. 2008) (orig. proceeding).

Inherent Power to Sanction

A trial court possesses inherent powers "that aid the exercise of their jurisdiction, facilitate the administration of justice, and preserve the independence and integrity of the judicial system." *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 718 (Tex. 2020). Those powers include the power to discipline an attorney's behavior but invoking the trial court's inherent power to sanction an attorney "necessitates a finding of bad faith." *Id.*

"Bad faith is not just intentional conduct but intent to engage in conduct for an impermissible reason, willful noncompliance, or willful ignorance of the facts."

8

*Id.* at 718-19. Without more, errors in judgment, lack of diligence, unreasonableness, negligence, or even gross negligence do not equate to bad faith. *Id.* at 719. "Bad faith includes conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose." *Id.* at 719 (internal quotations omitted). "Bad faith can be established with direct or circumstantial evidence, but absent direct evidence, the record must reasonably give rise to an inference of intent or willfulness." *Id.*

Aguilar argues this Court cannot consider evidence developed on May 31 and June 5, 2024. We disagree. The trial court considered the disqualification and sanctions as a single proceeding over multiple sessions. In the June 20 hearing, the trial court expressly considered the evidence from May 31 and June 5 without objection from Aguilar. The evidence developed on May 31 and June 5, 2024, was before the trial court when it issued the sanctions order on June 27, 2024.

Aguilar argues there is no evidence that he acted in bad faith or that he interfered with the trial court's core functions. The trial court considered evidence that Aguilar must be disqualified from representing Mill Man in Hood's lawsuit because he had obtained confidential information from Hood in conversations in which she was seeking legal representation from him. Aguilar knew he was subject to disqualification because the conflict had become an issue in the federal lawsuit that prevented the federal lawsuit from going forward. Knowing the conflict existed, Aguilar appeared for Mill Man in Trial Cause Number 24-03-03962-CV. Although

9

he was aware that he had already nonsuited the lawsuit identified in the lis pendens, Aguilar sent Hood's lawyer an email in which he threatened to cost Hood $100,000 in attorney's fees unless Hood nonsuited her action to expunge the lis pendens. Aguilar did not release the lis pendens until he faced disqualification and sanctions. As the trial court observed, getting Aguilar to release the lis pendens required hearings and wasted judicial resources just as he had threatened in his email to opposing counsel. After reviewing the mandamus record and considering the arguments presented by the parties in this proceeding, we conclude that Aguilar has failed to establish that the trial court abused its discretion by finding that Aguilar engaged in sanctionable conduct.

Just Sanctions

"The decision to impose sanctions involves two distinct determinations: (1) whether conduct is sanctionable and (2) what sanction to impose." *Id.* at 716. "[I]n order to safeguard constitutional due process rights, a sanction must be neither unjust nor excessive." *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 363 (Tex. 2014). "A just sanction must be directed against the abusive conduct with an eye toward remedying the prejudice caused to the innocent party, and the sanction must be visited upon the true offender." *Id.* "[T]he sanction imposed should be no more severe than necessary to satisfy its legitimate purposes." *Id.* "Legitimate purposes

10

may include securing compliance with the relevant rules of civil procedure, punishing violators, and deterring other litigants from similar misconduct." *Id.*

Aguilar argues none of the sanctions imposed upon him are justified. We disagree. Aguilar voluntarily performed CLE before he was ordered to do so, making any dispute about requiring Aguilar to obtain ethics training moot. The mandamus record reveals a direct relationship between Aguilar's offensive conduct and the award of attorney's fees as a sanction. Ordering Aguilar to pay the attorney's fees Hood incurred in this matter is directed towards remedying the prejudice caused to the innocent party, is visited upon the true offender, and satisfies the legitimate purposes of the order. We conclude Aguilar failed to establish an abuse of discretion by the trial court in imposing attorney's fees and continuing legal education on Aguilar for the offensive conduct that he committed in this case.

Aguilar argues the trial court's order that he pay any judgment that might be assessed against Mill Man in this case completely lacking in any basis. This requirement in the sanctions order originated when Hood's attorney pointed out to the trial court that Aguilar had exposed Mill Man to potential liability for statutory damages for filing a fraudulent notice of lis pendens. *See generally* Tex. Civ. Prac. & Rem. Code Ann. § 12.002. The trial court noted, however, that Hood had not even pleaded that Mill Man filed a fraudulent lien, let alone prevailed on such a claim. To the extent that a mandamus petition seeks mandamus relief based upon events that

11

have not yet occurred and remain merely hypothetical, the appellate court lacks jurisdiction to render an advisory opinion on a factual situation that may or may not arise in the future. *In re Kuster*, 363 S.W.3d 287, 290 (Tex. App.—Amarillo 2012, orig. proceeding). The imposition of any actual liability on Aguilar is, at this point, speculative and entirely dependent upon events that may or may not occur. We conclude this part of the trial court's sanctions order is not subject to mandamus review at this time because it is not ripe.

Aguilar argues that by ordering him to write an essay of apology to Hood, the trial court forces Aguilar to admit to wrongdoing during his representation of Mill Man in a case-determinative admission against Mill Man's interest. "[A] party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation." *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding). Nothing in the trial court's order suggests that the trial court would rule that the apology would be admitted in evidence in a trial on the merits of Hood's case against Mill Man. In such an event, Mill Man would have an adequate remedy by appeal.

Aguilar has not shown that he is entitled to mandamus relief. Accordingly, we lift our stay order of July 23, 2024, and we deny the petition for a writ of mandamus. *See* Tex. R. App. P. 52.8(a).

PETITION DENIED.

PER CURIAM

Submitted on August 2, 2024
Opinion Delivered October 24, 2024

Before Golemon, C.J., Johnson and Wright, JJ.